# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **RUSSEL E. WASHINGTON,** *PLAINTIFF,* | § § § | |
| **VS.** | § § § | Civil Action No. 3:12-cv-00154 |
| **ECOMET BURLEY, ROLLIE FORD, TIMOTHY FIELDS, CYNTHIA BELL-MALVEAUX, EDWARD JONES, DONNA HOLCOMB, DAVID RAC, DWIGHT BRANNON, JOE CANTU, AND KURT SISTRUNK,** *DEFENDANTS.* | § § § § § § § § § § § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

This action is filed on behalf of Russel E. Washington ("Plaintiff"), Plaintiff, against La Marque Independent School District ("LMISD"), Ecomet Burley ("Burley"), Rollie Ford ("Ford"), Timothy Fields ("Fields"), Cynthia Bell-Malveaux ("Malveaux"), Edward Jones ("Jones"), Donna Holcomb ("Holcomb"), David Rac ("Rac"), Dwight Brannon ("Brannon"), Joe Cantu ("Cantu") and Kurt Sistrunk ("Sistrunk"), Defendants collectively. The purpose of Plaintiff's Second Amended Petition is to: a) to remove Defendant Galveston County from this lawsuit; b) to remove Defendant La Marque Independent School District from this lawsuit; and c) to remove all causes of action against the Defendants that are being brought forth under 42 U.S.C. § 1983. Further, in support of Plaintiff's Third Amended Petition, Plaintiff submits the following:

## A. Discovery Control Plan

1.     Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4 because of the complexity of the matters pending before the Court and this suit is not governed by Texas Rule of Civil Procedure 190.2 or 190.3. Plaintiff asks that the Court enter a scheduling order at the earliest convenient time after a hearing on the issue is held with the parties.

## B. Parties

2.     Plaintiff is Russel E. Washington. Plaintiff is a resident of Galveston County, Texas and resides at: 3012 Cedar Drive, La Marque, Texas 77568. Plaintiff may be served by and through his attorneys of record: The Pinkerton Law Firm, PLLC, 711 W. Bay Area Blvd., Suite 410, Webster, Texas 77598.

3.     Defendant Ecomet Burley, sued in his individual capacity, is an individual residing in the state of Texas. Defendant can be served by and through his attorney of record: Rogers, Morris & Grover, L.L.P., 5718 Westheimer, Suite 1200, Houston, Texas 77057.

4.     Defendant Rollie Ford, sued in his individual capacity, is an individual residing in the state of Texas. Defendant can be served by and through his attorney of record: Rogers, Morris & Grover, L.L.P., 5718 Westheimer, Suite 1200, Houston, Texas 77057.

5.     Defendant Timothy Fields, sued in his individual capacity, is an individual residing in the state of Texas. Defendant can be served by and through his attorney of record: Rogers, Morris & Grover, L.L.P., 5718 Westheimer, Suite 1200, Houston, Texas 77057.

6. Defendant Cynthia Bell-Malveaux, sued in her individual capacity, is an individual residing in the state of Texas. Defendant can be served by and through her attorney of record: Rogers, Morris & Grover, L.L.P., 5718 Westheimer, Suite 1200, Houston, Texas 77057.

7. Defendant Edward Jones, sued in his individual capacity, is an individual residing in the state of Texas. Defendant can be served by and through his attorney of record: Rogers, Morris & Grover, L.L.P., 5718 Westheimer, Suite 1200, Houston, Texas 77057.

8. Defendant Donna Holcomb, sued in her individual capacity, is an individual residing in the state of Texas. Defendant can be served by and through her attorney of record: Rogers, Morris & Grover, L.L.P., 5718 Westheimer, Suite 1200, Houston, Texas 77057.

9. Defendant David Rac, sued in his individual capacity, is an individual residing in the state of Texas. Defendant can be served by and through his attorney of record: Rogers, Morris & Grover, L.L.P., 5718 Westheimer, Suite 1200, Houston, Texas 77057.

10. Defendant Dwight Brannon, sued in his individual capacity, is an individual residing in the state of Texas. Defendant can be served by and through his attorney of record: Rogers, Morris & Grover, L.L.P., 5718 Westheimer, Suite 1200, Houston, Texas 77057.

11. Defendant Joe Cantu, sued in his individual capacity, is an individual residing in the state of Texas. Defendant can be served by and through his attorney of

record: Rogers, Morris & Grover, L.L.P., 5718 Westheimer, Suite 1200, Houston, Texas 77057.

12.     Defendant Kurt Sistrunk, sued in his individual capacity, is an individual residing in the state of Texas. Defendant can be served by and through his attorney of record: Donald S. Glywasky, County Legal Department, County Courthouse, 5th Floor, 722 Moody, Galveston, Texas 77550.

### C. JURISDICTION & VENUE

13.     Jurisdiction and venue extends to the Defendants pursuant to Tex. Civ. Prac. & Rem. Code §15.002 because the incidents forming the basis of this lawsuit occurred in La Marque, Galveston County, Texas.

14.     This Court has personal jurisdiction over the Defendants because they were doing business in Galveston County, Texas at the time of the incident that makes the basis of this lawsuit. Moreover, Defendants' contacts with Galveston County, Texas are systematic and continuous. As such, venue and jurisdiction are proper pursuant to Tex. Civ. Prac. & Rem. Code §15.002 and other applicable statutory law in Texas.

15.     The amount in controversy is within the jurisdictional limits of this Court.

### D. EXHIBITS TO ORIGINAL PETITION

16.     Pursuant to Tex. R. Civ. Proc. 59, attached to this petition is a series of affidavits and documents which support Plaintiff's claims against said Defendants. Please see the following list of the attached exhibits that are in support of Plaintiff's Original Petition:

Exhibit A:     Plaintiff's awards, certificates, credentials and accolades received from his employer and community;

- 4 -

| | |
|---|---|
| Exhibit B: | All work evaluations which Plaintiff has undergone during his tenure with LMISD; |
| Exhibit C: | E-mails and letters from Burley and Ford to Plaintiff directing him to stripe his car; |
| Exhibit D: | 3 page excerpt from Citizens' Petition to remove Burley; |
| Exhibit E: | Malicious charges filed against Bo Hunter and Peace Bond filed by Malveaux against Bo Hunter; |
| Exhibit F: | Affidavit of Milton Johnson; |
| Exhibit G: | E-mails and letters from Ford to Plaintiff directing Plaintiff to change the evaluation scores of Officer Fields, Officer Fields' original and modified evaluation, and letter from Burley to Officer Rowe releasing Officer Rowe; |
| Exhibit H: | Copy of the petition brought forth by Malveaux against Plaintiff; |
| Exhibit I: | Affidavit of William Ray; |
| Exhibit J: | Affidavit of Malloy Scott; |
| Exhibit K: | Affidavit of Pastor DJ Harris; |
| Exhibit L: | An excerpt from Sgt. Borrow's interview with Tim Goodson and corresponding documents to the investigation and indictment; |
| Exhibit M: | Reinstatement letter to Jennifer Monroe; |
| Exhibit N: | Letters and e-mails pertaining to an investigation regarding Ed Tombrella; |
| Exhibit O: | Newspaper article of Cedric Mason for the indictment of raping a 14 yr old girl; |

| Exhibit P: | Newspaper articles pertaining to former LMISD superintendant Adrian Johnson's DWI, salary raise, and contract extension; |
|---|---|
| Exhibit Q: | Letter from Burley to the Board of Trustees recommending that Plaintiff be released from employment; |
| Exhibit R: | Newspaper articles pertaining to indictments manufactured against Plaintiff; |
| Exhibit S: | Copy of Plaintiff's request to address the trustees at an open forum which was denied and copy of a past successful lawsuit against the College of the Mainland's Board of Trustees for violating the same right; |
| Exhibit T: | Documents pertaining to Defendants' denial of Plaintiff's raise, which he was entitled to under the New Compensation Plan; |
| Exhibit U: | Affidavit of Danny Rowe; |
| Exhibit V: | Copy of the dismissal of all charges against Plaintiff; |
| Exhibit W: | Copy of documents pertaining to Burley receiving funds in violation of his contract; |
| Exhibit X: | Affidavit of Monica Jones; |
| Exhibit Y: | Affidavit of Corporal Robert Judson; |
| Exhibit Z: | Documents illustrating that Burley put Plaintiff on administrative leave three times in three years; |
| Exhibit AA: | La Marque Independent School District Police Offense Report pertaining to Malloy Scott with attached letters concerning the incident; |
| Exhibit BB: | Notarized Statement of Keith Washington where he makes a formal complaint against Mrs. Malveaux; |

Exhibit CC:   Citizen's Criminal Complaint Form filed by
              W.C. Hunter against Officer Fields;

Exhibit DD:   E-mail from Mrs. Malveaux to members of
              the board where she makes false accusations
              against Plaintiff;

### E. FACTS

17.     Plaintiff dedicated more than 18 years of hard work and exemplary service

to LMISD. For his hard work and dedication, Plaintiff earned the respect and admiration

of the schools, students and community.[1] Plaintiff honored the badge during his service

to LMISD—treating board members, faculty members, students, and the general public

with care, dignity, loyalty and respect. Before Burley[2] launched a dastardly attack over a

personal vendetta against Plaintiff and before Burley conspired with LMISD to

wrongfully terminate and publicly disgrace Plaintiff, Plaintiff had planned on continuing

his dedicated and honorable service to LMISD for many years to come. In fact, that is

still Plaintiff's wish and desire.

18.     Plaintiff began his career with LMISD as a police officer and worked his

way up to Chief of Police. Throughout Plaintiff's career with LMISD, he repeatedly

earned outstanding evaluations—for that his term contracts were renewed every two

---

[1] See attached Exhibit A. Exhibit A is copies of Plaintiff's awards, certificates of appreciation, credentials
and accolades that he earned over the years while he was employed for LMISD. Prior to Burley's tenure as
superintendent for LMISD, Plaintiff never had any problems with the staff or LMISD.

[2] Burley has a tarnished past as Superintendent of LMISD. His unethical and bullying practices seem to
have caught up with him. Recently, over 1,000 concerned citizens signed a petition to have him removed
immediately as superintendent. Please see Exhibit D. Exhibit D illustrates that Burley's conduct, not just
with Plaintiff, has given rise to substantial efforts being made for his removal. Obviously, Burley's wrath
has drawn the eye of the public for which he is supposed to serve—and the public has spoken—Burley
must go.

years without question. His last two-year term contract was renewed April 20, 2009, after another good evaluation.[3]

19.     Trouble began brewing for Plaintiff in November 2006 when newly-hired superintendent Ecomet Burley began relentlessly harassing Plaintiff.[4] For example, Burley ordered Plaintiff back in uniform for all LMISD events, including situations where Plaintiff was not supposed to be in uniform. Plaintiff had not been required to wear a uniform since 1997. Burley also ordered Plaintiff to "stripe" his police car that was also used as his personal vehicle.[5] Burley brazenly stated to Plaintiff that he was "given the directive [to require the uniform and the striping of the car] from the board members and if he did not comply this would give him the reason" he needed to terminate him. In the

---

[3] Four months after the favorable evaluation, Burley, on his own and out of protocol, did another review where he unilaterally and without explanation gave Plaintiff "low scores." Please see attached Exhibit B. Exhibit B is copies of all of the evaluations Plaintiff has ever undergone. As evidenced by the evaluations, it was not until Burley came on board that Plaintiff's problems at work began.

[4] As stated before, Burley had a personal vendetta against Plaintiff. Once being named superintendent, Burley began using his position and power to harass and destroy Plaintiff. Based on information and belief, it is alleged that Burley's vendetta may stem from Burley's rumored relationship with an under-aged minor student while Burley was principal of the school that the young lady attended in La Marque, Texas. Simply put, Burley was allegedly having an improper, physical relationship with a student when he was an acting principal. Based on information and belief, it will also be alleged that this is not the first time Burley had engaged in such acts with under-aged, minor students. Burley believed Plaintiff knew of these relationships. Plaintiff did not actually know of these relationships until after his termination. But, Burley was petrified that Plaintiff would expose him in this regard because he knew he could not control Plaintiff. Hence, Plaintiff had to be removed, discredited, and destroyed. Burley also suspected Plaintiff had knowledge that Burley defrauded FEMA or improperly allocated FEMA and/or insurance funds. (Please see Exhibit F.) Again, Plaintiff actually did not have any knowledge of this issue until after he was terminated. This was simply one more reason in Burley "thought" in his confused, tyrannical conspiracy-theorist mind, Plaintiff had to be removed.

Basically, in his ambition to continue his rise and protect his place in district politics, Burley needed to clean house. Plaintiff became his target because of what Burely "thought" Plaintiff knew. With all the power and influence he needed, Burley took aim at ruining and destroying a dedicated public servant of the public for his own personal gain, protection and benefit.

[5] Please see attached Exhibit C. Exhibit C is the directives from both Defendants Burley and Ford to Plaintiff directing him to begin wearing a uniform at the school and to stripe his police car. This is the first of many actions taken against Plaintiff to begin making Plaintiff's life at work difficult. It also marks the beginning of a conspiracy between Burley, Malveaux and the board to wrongfully terminate Plaintiff. Please see Exhibit Y. Exhibit Y is the affidavit of Corporal Robert Judson where he attests to the initial stages of the alleged conspiracy against Plaintiff.

previous 12 years, the LMISD police chief vehicle was never striped. Both of these incidents were an attempt to create a situation where Burley could, as he admitted, manufacture grounds to terminate Plaintiff for noncompliance.[6]

20.     Additionally, Burley ordered Plaintiff to raise the evaluation scores for a less qualified and under-scored officer (Fields), who actually had the lowest evaluation on the force. Burley wanted to have Officer Fields' scores raised in order to give Officer Fields a raise instead of giving it to a more qualified officer (Rowe) who deserved it. This evaluation also directly impacted which of the two officers would stay and which would be released. When Plaintiff refused to lower the evaluation scores, Burley ordered Assistant Superintendent Rollie Ford to issue a written directive[7] to Plaintiff to force him to raise the preferred officer's scores to ensure that he would be retained and the other officer would be laid off.[8]

21.     Whenever Plaintiff questioned the validity of any of Burley's actions, Burley retaliated against him and placed him on administrative leave. In the 15 years of Plaintiff's employment with LMISD before Burley became Superintendent, Plaintiff was

---

[6] The evidence will also show that board member Malveaux told a Texas City Police Corporal (Judson) that the specific reason they put Plaintiff back in uniform and made him stripe the car was because the board did not think he would comply and the board would then be able to terminate him for insubordination. Please see attached Exhibit Y. Exhibit Y is the sworn affidavit of Corporal Robert Judson confirming that Malveaux admitted to him that she was conspiring to get Plaintiff fired.

[7] Please see attached Exhibit G. Exhibit G is the directives from Ford to Plaintiff, the original evaluation form, the modified evaluation form, and letter from Burley to Officer Rowe releasing Officer Rowe. Had it not been for Burley telling Ford to order Plaintiff to change the evaluations of Officer Fields, Officer Rowe would still be on the force today. But Burley "had it out" for Officer Rowe and Officer Fields was a "favorite." For further information and details pertaining to this issue, please see Exhibit U. Exhibit U is the Affidavit of Danny Rowe.

[8] Please see attached Exhibit U. Exhibit U is the sworn affidavit of Officer Danny Rowe. In his affidavit, Mr. Rowe outlines the details around "score-gate" and his ultimate departure from the force at the hands of Burley.

never placed on administrative leave. After Burley was hired, Plaintiff was placed on administrative leave three times in three years.[9]

22.    The LMISD and its members also improperly targeted Plaintiff.[10]  For example, Malveaux has frequently abused her power as board trustee to target Plaintiff in

---

[9] Please see attached Exhibit Z. Exhibit Z is copies of documents illustrating that Burley wrongfully put Plaintiff on administrative leave three times in three years, despite the fact that before Burley's arrival Plaintiff was not once placed on administrative leave.

[10] Burley and Malveaux have a clear history of abusing their power and utilizing unethical and/or legal action against citizens if they get in their way. Essentially Burley and Malveaux are bullies with the power to bully. This shameful behavior of attacking citizens who speak out against them has been going on for years—no different than the tactics they utilized against Plaintiff. The following is a brief summary of some of the incidents where innocent citizens have been bullied:

- Jimmy Saldana—After a board meeting when they fired Plaintiff, Malloy Scott made a comment to Mr. Burley. Mr. Burley falsely said Malloy threatened him. When Jimmy tried to help Malloy leave, Police Chief Fields (Burley's man in the department) falsely accused Jimmy of assaulting him. Mr. Burley and Chief Fields then manufactured charges, using Mrs. Malveaux's husband as a witness. A police report was done, but charges were never brought by the DA's office. Please see attached Exhibit J. Exhibit J is the sworn affidavit of Malloy Scott.

- Keith Washington—Keith spoke at a board meeting regarding Plaintiff. Malveaux got very upset. During the recess, Malveaux sought out Keith and verbally attacked him. She then proceeded to have the district call Keith's employer and try to get him fired just for speaking the truth at a board meeting. Please see attached Exhibit J and Exhibit BB. Exhibit J is the sworn affidavit of Malloy Scott. Exhibit BB is a notarized statement from Keith Washington describing the events at the board meeting.

- Bo Hunter—After a board meeting, Malveaux got in a heated discussion with another board member. In her tirade, Malveaux then directed a verbal attack at Bo. Bo is a 74 year old man who volunteers twice a week at the schools, a member of the La Marque City Park's Board and works on other various charitable programs in the community. Malveaux falsely accused Bo of "pinning" her against a car and stepping on her foot. A police report was filed. The school district police department took the report to the DA's office. Charges were filed—Assault Class B. Please see attached Exhibit J. Exhibit J is the sworn affidavit of Malloy Scott. Please see Exhibit E. Exhibit E is copies of malicious charges brought against Bo Hunter.

- Monica Jones—Malveaux attacked Monica because she "heard" that Monica was "talking bad about her." Malveaux complained to Monica's supervisors repeatedly, threatened to file charges with the DA's office and sought out to destroy Monica. To get what she wanted, Malveaux was abusive, deceitful and attempted to use her position of power with the school board to get an innocent citizen fired from her job—simply because she thought a person was "talking bad about her." Please see Exhibit X. Exhibit X is the sworn affidavit of Monica Jones, which lays out in detail her unsavory dealings she had with Mrs. Malveaux, illustrating Mrs. Malveaux's propensity for unethically leveraging power over others in a dishonest, deceitful, and vindictive way to reach any twisted, self-absorbed ends she deems necessary.

- Malloy Scott—Malloy Scott made a comment to Burley on behalf of Plaintiff. He indicated to Burley that he was disgusted with Burley's behavior. In response, Burley had Officer Fields

an attempt to get him fired.[11]  Malveaux's grudge against Plaintiff goes back years, but

her attack on him exploded because of a private conversation that Plaintiff had with a

concerned citizen of Galveston County.  This is generally referred to as "tape-gate."  The

story goes as follows:

> One Sunday morning a man with no connection to LMISD
> approached Plaintiff at his home wanting to discuss his (the
> man's) belief that LMISD board members were receiving
> kick backs related to a bond issue. Plaintiff, having been
> told by a previous superintendent that board members
> would not vote unless they were given something (and
> indicated money), causally implied that it would not be
> surprising if "board members got paid." Unbeknownst to
> Plaintiff, the man had taped the conversation and later
> shared it with Malveaux, hence the term "tape-gate" was
> born.    Malveaux then frivolously sued Plaintiff for
> defamation despite that fact that Plaintiff never uttered her
> name, only the man did.[12]  Plaintiff never heard the tape
> until he was brought before the board for termination for
> "talking about" a board member.

---

escort Malloy out of the school board meeting, stating that Malloy was "threatening the
superintendent." The following day Burley had Officer Fields file an offense report against Malloy
and also had his attorney write a threatening letter to Malloy. Please see attached Exhibit J and
Exhibit AA.  Exhibit J is the sworn affidavit of Malloy Scott. Exhibit AA is the offense report
filed by Officer Fields with the letter from Burley's attorney to Malloy Scott.

- Attempted indictment of 15 citizens—In November or December of 2011, Burley and Fields tried
  to get 15 innocent citizens indicted through the DA's office for various trumped-up charges.  All
  15 people were no billed by the grand jury.  Please see attached Exhibit J.  Exhibit J is the sworn
  affidavit of Malloy Scott.

[11] Please see attached Exhibits H, I, J, K. Exhibit H is a copy of the lawsuit which Malveaux had filed
against Plaintiff.  Due to the lawsuit, Malveaux should have never been in a position to vote as a board
member on any issues that pertained to Plaintiff.  Exhibit I is a copy of William Ray's affidavit which
explains that Malveaux was on a "witch hunt" to get Plaintiff fired. Exhibit J is a copy of Malloy Scott's
affidavit which explains that he heard Malveaux threatening Plaintiff about a tape which contained a
recording of Plaintiff. Exhibit K is a copy of Pastor Harris' affidavit which explains that Malveaux was
concerned that Plaintiff had knowledge of a possible fraudulent act where she allegedly misrepresented
information to FEMA. (Ex.K.)  Pastor Harris also states that Mrs. Malveaux was suspicious that Plaintiff
was investigating this matter, which was one of the reasons she wanted to get rid of him—she wanted him
silenced.  Plaintiff actually knew nothing about the matter until after his termination.

[12] The suit record number is "Cause No. 11CR2648."  Based on the frivolous nature of the action,
Malveaux was forced to drop the case and it was permanently dismissed.  Please see attached Exhibit H.

23.    Thereafter, Trustees Malveaux, Cantu, Rac, and Holcomb began conspiring to target Plaintiff. In fact, Burley told Plaintiff that some board members told Burley to do "<u>whatever it took</u>" to terminate Plaintiff.[13] Apparently, the abuse of power and privilege runs deep in LMISD.[14]

---

[13] Please see Exhibit K. Exhibit K is the sworn affidavit of Pastor DJ Harris. Pastor Harris swears that he heard a conversation where Burley indicates that he would do whatever it took to "keep [Plaintiff] out," just as he had been instructed by the other conspiring board members.

[14] The evidence will clearly show that Burley, Malveaux, and other board members levied the might of their political power against Plaintiff to get him fired. The ultimate reason that Plaintiff was given for his termination was a manufactured, bogus indictment that he was later cleared on all charges. Burley, Malveaux and the other conspirators used this incident to justify Plaintiff's termination. But, that has not always been the district's policy. Actually, "policy" in the district was much different—usually things were ignored or swept under the rug—not for Plaintiff, however. As examples of the contradictory policy within the district, please see Exhibits J, I, M, N, O, P, and CC.

- Exhibit M is a copy of the reinstatement letter of Jennifer Monroe. Jennifer Monroe is an employee who was fired for theft and then rehired by Burley. She also accused Plaintiff of stealing two deep fryer cookers from the bus maintenance barn. Burley immediately used this information and reported it to the District Attorney's Office. The investigation never produced a shred of evidence against Plaintiff. In fact, the evidence showed that all but one of the frying pans were sold—the other one was not fit for sale and trashed by the school.

- Exhibit N is copies of letters written regarding Ed Tombrella. Ed Tombrella was found by Eric Ward to have been wrongfully misusing district property for his own personal gain. However, Ed Tombrella was never reprimanded and/or disciplined for those actions.

- Exhibit O is a newspaper article where the head coach of La Marque High School basketball, Cedric Mason, has been indicted for raping a 14 year old. He has only been placed on administrative leave with pay. He has yet to be reprimanded, disciplined, or brought up for termination for the alleged criminal activity even though he has been indicted by the grand jury on two counts of sexual assault of a child.

- Exhibit P is newspaper articles pertaining to Adrian Johnson, the previous superintendant. Adrian Johnson pled no contest to a DWI and placed on one year probation. However, he was never reprimanded, disciplined or terminated for his DWI. Instead, he was promoted, given a raise and a one year extension.

- Exhibit I is William Ray's affidavit. He specifically states that Malveaux has a well-known gambling problem. However, nothing has been done by the LMISD to either correct this problem or remove her from the board for participating in illegal activities.

- Exhibit J is Malloy Scott's affidavit. In his affidavit he references to attached documents that present evidence that Burley received a check that he was not entitled to on July 31, 2007. Burley requested to be paid on 10 unused vacation days which was in direct violation of his contract. Burley's only reprimand was to pay back the monies he received. Burley was obviously protected from any discipline due to his position and standing with the LMISD.

24.     Burley, Malveaux, and other board members also began harassing Plaintiff over non-issues and began imposing various restrictions and obligations on him. When Plaintiff filed grievances[15] over the harassment he was experiencing, Burley refused to present Plaintiff's grievances to the board.

25.     When the board's goal of terminating Plaintiff failed, Burley and Malveaux teamed-up, conspired, and used political leverage with then District Attorney Kurt Sistrunk to have Plaintiff indicted for crimes[16] he did not commit.[17] After the indictment, Plaintiff was placed on administrative leave.[18]

---

- Exhibit CC is a Citizen's Criminal Complaint Form where W.C. "Bo" Hunter complains of being harassed and intimidated by Officer Fields, "Burley's boy". He states in his complaint form that Officer Fields on one occasion shouted at him and threatened to take Mr. Hunter to jail in front of school staff and children. On another occasion, Officer Fields had Mr. Hunter escorted out of a school board meeting without giving the man any reason or justification for his actions. Since Mr. Hunter's filing of the Citizen's Complaint Form, there has been no action or investigation into Officer Field's behavior.

Exhibits J, I, M, N, O, P, and CC are all examples of people that were employed by LMISD that committed unlawful actions. However, instead of getting punished or reprimanded like Plaintiff, the individuals were either welcomed back, promoted, or the district simply turned a blind-eye to their actions. It is this exact behavior that exemplifies the abuse of power in the district and the scrutiny and harassment that Plaintiff underwent for not being in LMISD's and Burley's good favor.

[15] Please see attached Exhibit T. Exhibit T is just one example of the many forms of harassment that Plaintiff underwent. Exhibit T is a series of documents pertaining to a raise of salary which was not given to Plaintiff. The human resource department denied Plaintiff a raise that he deserved due to the new compensation plan, which was set in place by Burley. Both Burley and the human resource director, Dwight Brannon, benefited from the new compensation plan by receiving raises. However, both individuals made sure that Plaintiff would not benefit fully from the New Compensation Handbook.

[16] The conspiracy to get Plaintiff "charged" for criminal activities began in October 2007. At that time, Burley contacted Sistrunk about an incident where Plaintiff had to forcibly restrain a student. The incident was minor and fell within Plaintiff's duties. A grand jury "no billed" Plaintiff on this first trumped-up charge. After the no-bill, Burley brazenly showed Plaintiff an e-mail from Sistrunk that said "not to worry, we will get him next time (paraphrasing)." Foiled by the grand jury but not about to give up, Burley and Sistrunk again manufactured bogus charges against Plaintiff in September of 2009. Specifically, the charges alleged "auto theft." In reality, Plaintiff merely owned a vehicle he rebuilt and when he tried to fix the title of the vehicle because there had been a processing error, Burley and Sistrunk had charges levied that Plaintiff was involved in, and the master-mind of, an "auto theft ring." Nothing could be further from the truth—and they knew it. Please see attached Exhibit L. Exhibit L presents a copy of an excerpt from when Sgt. Borrows interviews Tim Goodson. In this transcript, Sgt. Borrows admits that the complaint came from the superintendant. It also contains the indictment brought forth against Plaintiff and a letter from Ford, which shows that he had prior knowledge of the incident with the vehicle prior to police

26.     In March 2010[19], Burley placed the following on the agenda for the March 25, 2010 LMISD Board Special Meeting: "Consider recommendation to propose the termination of the contract and employment of the LMISD Chief of Police." But, before this agenda was posted, neither Burley nor anyone else presented Plaintiff with a signed complaint providing grounds for his termination.

27.     At the March 25, 2010 LMISD's Special Meeting, Burley did not merely propose that the board consider whether to terminate Plaintiff, he proposed the "actual" termination of Plaintiff based solely upon the sham indictment—an indictment that was manufactured by Burley and fraudulently and criminally filed by Sistrunk. Actual termination was not on the agenda. LMISD, which included Malveaux and other board members who sided with and conspired with Malveaux against Plaintiff, then voted to terminate Plaintiff. LMISD did not allow Plaintiff the opportunity to be heard or present evidence. Moreover, those presiding over the hearing and vote were not fair and impartial. Notably, at this meeting, Ford (Assistant Superintendent) stated that once Plaintiff is exonerated, he can be reinstated. Well, Plaintiff was exonerated and cleared

---

investigation. Sistrunk presented the evidence himself to a grand jury and got his indictment. More fraudulent charges and an indictment came in March of 2011.

**ALL CHARGES AND INDICTMENTS WERE EVENTUALLY DROPPED AND DISMISSED AGAINST PLAINTIFF BY JUNE 2011, but the damage was unfortunately already done.**

[17] Allegedly, Burley and Sistrunk struck a bargain. Burley wanted Plaintiff humiliated, disgraced, terminated and run out of town in shackles and needed Sistrunk to do the job. Sistrunk allegedly needed "the black votes" in La Marque and Texas City and Burley allegedly promised to deliver. Thus, the deal was cut: Get rid of Plaintiff once and for all and Sistrunk gets "the black votes" to be re-elected.

[18] Galveston County's current district attorney dropped and permanently dismissed all charges, clearing Plaintiff of the trumped-up, illegal prosecution set in motion by Burley and Sistrunk. Please see Exhibit V.

[19] Please see attached Exhibit Q. Exhibit Q is a letter from Burley to the Board of Trustees, which states that Burley no longer wants to extend employment to Plaintiff.

of all charges, but the reinstatement never occurred despite Plaintiff's diligent and patient efforts.

28.     On April 6, 2010, Plaintiff requested a hearing on the board's decision to terminate his employment. The LMISD scheduled a "Special Meeting" on April 22, 2010, for this hearing.  However, the same board members in attendance and who voted at the March 25, 2010 Special Meeting were present for and would be voting at this "hearing." This included Malveaux and those conspiring with her against Plaintiff.[20] Moreover, LMISD board member Holcomb was in attendance and voted at the April 22, 2010 "hearing" despite the fact that she had already moved to League City, Texas—out of the district and disqualifying her voting capacity.  At this hearing, the partial and unfair board voted to uphold Plaintiff's termination. Had Malveaux and Holcomb been excluded from the vote, as they should have been (along with other trustees conspiring with Malveaux), Plaintiff would not have been terminated.

29.     On February 14, 2011, the criminal case against Plaintiff that was the sole basis for Plaintiff's termination—was dismissed.[21] Thus, Plaintiff, according to Assistant Superintendent Ford, should have been reinstated long ago.

30.     Plaintiff pleaded and essentially begged for his job back.  With dignity and courage, he faced the abusive and defamatory media coverage[22] that was concocted by

---

[20] Since this meeting, Malveaux has repeatedly made false accusatory statements attacking Plaintiff's character. These remarks obviate the fact that Malveaux was not, is not, and will never be fair and impartial when deciding an issue that pertains to Plaintiff's employment with the district.  As recently as September 17, 2011, a year after the hearing, Malveaux is still found to be disparaging Plaintiff where she accuses Plaintiff to have abandoned a group of children when clearly they were under the care and watchful eyes of the La Marque Police Department. It is false accusatory statements such as these that show the true character of Malveaux. Please see Exhibit DD.

[21] Please see Exhibit V.

the Defendants. When requested, he attended mediations and resolution discussions in good faith where Defendants refused to acknowledge the depth of wrongdoing despite the overwhelming, indefensible mountain of evidence against Defendants. The clock kept ticking and the pages of the calendar kept turning without a resolution. Now, in the final hour for justice, Plaintiff has but one avenue left—litigation—to clear his name, restore his reputation and defend his civil and constitutional liberties. Justice will prevail.

## F. CAUSES OF ACTION

31.     Paragraphs 1-30 are incorporated herein and below.

## I. MALICE (COMMON LAW AND BY STATUTE)

32.     This section applies only to Defendants Burley, Ford, Fields, Malveaux, Holcomb, Rae, Brannon, Cantu, and Sistrunk. These identified Defendants were acting outside of the scope of their duties at the time of said cause of action and are each being sued in their individual capacities.

33.     Defendants' acts and omissions, when viewed from the standpoint of the actors at the time of the occurrence at issue, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants got together and purposely filed baseless indictments against Plaintiff which caused damage to his reputation and led to the eventual improper release of his job as Chief of Police for LMISD. Further, Defendants' conduct illustrates not only an attitude of conscious indifference to the rights, safety and welfare of Plaintiff, but also shows Defendants' actual and subjective awareness of the dangers of such conduct. Nevertheless,

---

[22] Please see attached Exhibit R. Exhibit R is copies of articles written by the local media regarding the indictments brought forth against Plaintiff.

Defendants proceeded with a conscious indifference to the rights, safety or welfare of the Plaintiff. Thus, Defendants acted with malice and, as a result, Plaintiff suffered damages.

## II. CONSPIRACY TO COMMIT FRAUD

34.     This section applies only to Defendants Burley, Ford, Fields, Malveaux, Holcomb, Rae, Brannon, Cantu and Sistrunk. These identified Defendants were acting outside of the scope of their duties at the time of said cause of action and are each being sued in their individual capacities.

35.     Defendants were members of a combination of two or more persons, and the object of the combination was to accomplish a lawful purpose by unlawful means. The members had a meeting of the minds on the object or course of actions. One of the members committed an unlawful, overt act to further the object or course of action. The overt act against Plaintiff was that Defendants knowingly filed baseless indictments against Plaintiff which eventually led to the improper firing of the Plaintiff from his employment with LMISD. Defendants knew that the improper indictments would lead to Plaintiff's termination with LMISD and that the termination would be for proper cause since he would have these indictments filed against him at the time of the firing. The Plaintiff suffered damages as a proximate result of the wrongful act.

## III. FRAUD & FRAUDULENT MISREPRESENTATION

36.     This section applies only to Defendants Burley, Ford, Fields, Malveaux, Holcomb, Rae, Brannon, and Cantu. These identified Defendants were acting outside of the scope of their duties at the time of said cause of action and are each being sued in their individual capacities.

37.     Defendants made a material representation to the Plaintiff and others that was false.     When the Defendants made the representation, Defendants knew the representation was false, or made the representation recklessly, as a positive assertion, and without knowledge of its truth.     Furthermore, Defendants made the representation with the intent that the Plaintiff and others act on it.     The Plaintiff and others relied on this representation, and the representation caused the Plaintiff to suffer damages.

## IV. MALICIOUS PROSECUTION (COMMON LAW)

38.     This section only applies to Defendant Sistrunk, Burley, Ford, Fields, and Malveaux.     These identified Defendants were acting outside of the scope of their duties at the time of said cause of action and are each being sued in their individual capacities.

39.     A criminal prosecution was commenced against the Plaintiff.     Defendants initiated or procured the prosecution.     The prosecution was terminated in the Plaintiff's favor because the Plaintiff was innocent of the charge.     Defendants did not have probable cause to initiate or procure the prosecution.     The Defendants acted with malice, and the Plaintiff suffered damages as a result of the prosecution.

## V. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

40.     This section applies only to Defendants Burley, Ford, Fields, Malveaux, Holcomb, Rac, Brannon, Cantu, and Sistrunk.     These identified Defendants were acting outside of the scope of their duties at the time of said cause of action and are each being sued in their individual capacities.

41.     The Plaintiff had a valid two-year employment contract with LMISD. Defendants named herein willfully and intentionally interfered with the contract. Defendant Sistrunk knowingly filed baseless indictments against the Plaintiff after

discussions with Defendants Burley and Malveaux knowing full well that the baseless indictments would lead to the termination of Plaintiff's employment with LMISD for proper cause. This intentional interference proximately caused the Plaintiff's injury. As a result of the Defendants' actions, the Plaintiff incurred actual damage and/or loss.

## VI. INFLICTION OF EMOTIONAL DISTRESS

42. This section applies only to Defendants Burley, Ford, Fields, Malveaux, Holcomb, Rac, Brannon, Cantu, and Sistrunk. These identified Defendants were acting outside of the scope of their duties at the time of said cause of action and are each being sued in their individual capacities. Defendants purposely contributed and/or actually filed baseless indictments against the Plaintiff in order to be able to terminate Plaintiff from his employment with LMISD for cause.

43. The conduct of the Defendants as set forth above was intentional, reckless, extreme and outrageous and inflicted severe emotional distress upon the Plaintiff. Plaintiff has incurred damages as a result of this conduct.

## VII. WRONGFUL TERMINATION

44. This section applies only to Defendants Burley, Ford, Malveaux, Holcomb, Rac, Brannon, and Cantu. These identified Defendants were acting outside of the scope of their duties at the time of said cause of action and are each being sued in their individual capacities.

45. The Plaintiff had an enforceable employment contract that limited Defendant LMISD's right to discharge the Plaintiff at will. There was privity between the Plaintiff and Defendants. The Plaintiff performed, tendered performance of, or was excused from performing his contractual obligations. Defendants breached the contract

by wrongfully discharging the plaintiff, and the Defendants' breach caused the Plaintiff to suffer damages.

### G. COMMON LAW AND STATUTORY DAMAGES

46.     Plaintiff's damages include all damages available under common and statutory law, including but not limited to, actual damages, exemplary damages, attorneys' fees, court costs, and interest. Plaintiff also seeks liquidated and unliquidated damages within the jurisdictional limits of this court.

47.     Damages are limited as the law applies to the claims brought against each individual Defendant, meaning Plaintiff only seeks the damages afforded for each claim and those damages are limited to the Defendants for which the claim is levied.

### H. EXEMPLARY DAMAGES

48.     Plaintiff's injury resulted from Defendants' malice, intentional tortious acts, or actual fraud, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

49.     Damages are limited as the law applies to the claims brought against each individual Defendant, meaning Plaintiff only seeks the damages afforded for each claim and those damages are limited to the Defendants for which the claim is levied.

### I. JURY DEMAND

50.     Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

### J. CONDITIONS PRECEDENT

51.     Any and all conditions precedent have been met prior to the filing of this action.

## K. Request for Disclosure

52.     Under Texas Rule of Civil Procedure 194, Plaintiff requests that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## L. Prayer

53.     FOR THESE REASONS, Plaintiff asks that the court issue citation for Defendants to appear and answer, and that Plaintiff be awarded a judgment against defendants for the following:

    a.   actual damages;

    b.   exemplary damages;

    c.   prejudgment and post-judgment interest;

    d.   attorneys' fees;

    e.   court costs; and

    f.   all other relief to which plaintiff is entitled.

54.     Plaintiff seeks damages in the amount of $10,000,000.00.

Respectfully submitted,

THE PINKERTON LAW FIRM, PLLC

/s/ *Chad Pinkerton*
ATTORNEY-IN CHARGE
**C. CHAD PINKERTON**
Federal ID No. 1068659
State Bar No. 24047199
**Jose Luis Orihuela**
Federal ID No. 1059551
State Bar No. 24066526
711 W. Bay Area Blvd, Suite 410
Webster, Texas 77598

281-332-2002 (office)
281-332-1008 (facsimile)
www.chadpinkerton.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May 2012, I faxed to below mentioned copy counsel the foregoing. I also electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Richard A. Morris
Rogers, Morris & Grover, L.L.P.
5718 Westheimer, Suite 1200
Houston, Texas 77057
P: 713-960-6000
F: 713-960-6025

Donald Glywasky
County Legal Department
County Courthouse, 5th Floor
722 Moody
Galveston, Texas 77550
P: 409-770-5562
F: 409-770-5560

_/s/ Chad Pinkerton_____
Chad Pinkerton