UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RUSSEL WASHINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3-12-154 |
| | § | |
| ECOMET BURLEY, *et al*, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| RUSSEL WASHINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3-12-41 |
| | § | |
| LA MARQUE ISD, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM AND ORDER

Terminations of public employees often result in litigation.  So do unsuccessful prosecutions.  This case involves both situations: Plaintiff Russel Washington, the former Chief of Police of La Marque Independent School District ("LMISD"), was fired after he was indicted on charges that were later dismissed.  The result is this consolidated lawsuit alleging an assortment of claims under the federal constitution, Texas common law, and Texas statutory law.  Washington brings the claims against the school

district, school district officials, and the former Galveston County District Attorney involved in his prosecution.

A number of dispositive motions are pending.  Former District Attorney Kurt Sistrunk seeks dismissal from the case on immunity grounds. Washington and LMISD have both filed summary judgment motions seeking judgment as a matter of law on the procedural due process claim relating to the adequacy of the hearings that led to Washington's termination.  LMISD also seeks summary judgment on Washington's Texas Open Meetings Act claim.

After reviewing the briefing, the pleadings and summary judgment evidence, and the controlling law, the Court makes the following determinations.   Former District Attorney Kurt Sistrunk is entitled to absolute immunity.   With respect to the procedural due process claim focused on the constitutionally required pretermination hearing, fact issues exist concerning whether the district afforded Washington an opportunity to be heard prior to his termination and whether the school board member who voted on his termination was biased.   LMISD is entitled to summary judgment, however, on the due process claim related to Washington's post-termination hearing and on the Texas Open Meetings Act claim.

I.    BACKGROUND

   A.  *Conflict Between Washington and LMISD Officials*

Washington joined LMISD's police force in 1992 and became Chief in 1995, a position he held until his termination in March 2010.[1]  According to Washington, all went well until Defendant Ecomet Burley became Superintendent of LMISD in December 2006.   Washington alleges that Burley soon developed a "personal vendetta" against him and began looking for an excuse to have the Board terminate him.  Docket Entry No. 3 at 8 n.4. Washington's evidence shows that he and Burley clashed over a number of incidents between December 2006 and March 2010.  These incidents ranged from minor quarrels, such as a disagreement over whether Washington had to wear his uniform on duty, to serious disputes, such as an incident regarding an audio recording of Washington accusing several Board members of accepting kickbacks from a contractor.

Three of the incidents are particularly relevant to the motions addressed in this Order.  The first occurred in late 2007.  That September, Washington forcibly restrained a student during an altercation at La Marque

---

[1] Because this section recounts facts relevant to both the motion to dismiss and the motions for summary judgment, the Court treats differently the facts that are based on Washington's allegations from those that are based on the summary judgment evidence. Generally, facts relevant to Sistrunk's Rule 12 motion are based on Washington's allegations, taken as true for purposes of ruling on the motion.  Facts relevant to the motions for summary judgment are based on the summary judgment evidence evaluated under the Rule 56 standard.

High School.  Docket Entry Nos. 3 at 13 n.16; 3-26 at 2–3.  LMISD put Washington on paid administrative leave, and Washington was referred for criminal prosecution to Defendant Sistrunk, at that time the Galveston County District Attorney.  Docket Entry No. 3-26 at 2, 4.  Washington alleges that Burley personally referred him for prosecution.  *See* Docket Entry No. 3 at 13 n.16.  The District Attorney's Office subsequently conducted an investigation and, in October 2007, presented criminal charges to a grand jury, which declined to indict Washington.  Docket Entry No. 3-26 at 2.  Washington then returned to his duties.

The second incident occurred in mid-2008.  That April, Byron Williams, a former LMISD janitor who had been terminated and convicted of disorderly conduct after threatening the previous LMISD Superintendent, gave the Galveston Daily News an audio tape of a conversation with Washington that Williams had recorded in 2007.  *See* Docket Entry No. 3-18 at 12, 16.  On the tape, Washington apparently stated his belief that certain members of the Board, including Defendant Cynthia Bell-Malveaux, had received kickbacks from a private contractor affiliated with a 2002 construction bond referendum.  *See id.* at 12–16.

In response to the ensuing public controversy, LMISD placed Washington on paid administrative leave in May 2008, and the Board

4

discussed the issue at a closed meeting.  Subsequently, in July 2008, Burley presented the Board with a formal recommendation to terminate Washington's employment.  However, "rather than fire Washington, the board of trustees voted to grant him a termination hearing on Aug. 6, during which he and school administrators [could] each present evidence.  Board President [Defendant] Joe Cantu said the board wanted to afford Washington every opportunity for due process."  Docket Entry No. 3-18 at 12.  After a two-day meeting, the Board voted to reject Burley's recommendation, and Washington returned to work.  Docket Entry No. 3-26 at 4.

The final incident, which ultimately led to Washington's termination, occurred in late 2009.  In early September of that year, the Galveston County District Attorney's Office began investigating Washington for allegedly providing false information on an application for a mechanic's lien on a vehicle.  According to Washington, Burley himself reported the alleged crime to the District Attorney's Office.  *See* Docket Entry No. 3-12 at 2.

### B.  *Washington Is Placed on Paid Leave*

On September 14, Defendant Rollie Ford, LMISD's Assistant Superintendent, sent Washington a letter placing him on paid administrative leave.  The letter stated that Washington could "contact either Rollie Ford or Ecomet Burley if [he had] questions or concerns during this administrative

5

leave." Docket Entry No. 29-3 at 9. On September 29, Ford sent Washington another letter, this one stating, "Please respond to this letter with a written statement outlining your understanding of the allegations that have been made against you, along with your signature. I will need your written statement by October 4, 2009. Should you have any questions, please do not hesitate to contact me." Docket Entry No. 29-3 at 12. On October 9, after Washington failed to respond, Ford wrote again, stating "I briefly spoke to you about this letter and the requirement . . . last Friday, October 2, 2009. . . . Mr. Washington, again I am directing you to state in your words what you know and understand to be the facts concerning the allegations and ongoing investigation that led to your placement on administrative leave." Docket Entry No. 29-3 at 14. On October 13, Washington responded through his attorney in a letter stating "[n]either Mr. Washington nor I have any specific knowledge of allegations being made against Mr. Washington at this time. Generally speaking, we have learned that the Galveston County Sheriff's Department is investigating an auto title incident in which Mr. Washington may or may not be implicated therein. Mr. Washington categorically denies any involvement in any criminal activity whatsoever." Docket Entry No. 29-3 at 16.

### C.  Washington Is Indicted

The District Attorney's Office, allegedly through Sistrunk himself, presented evidence to a grand jury in December 2009, which returned an indictment against Washington for the felony of providing false information to obtain a vehicle title.  This event was widely reported in the local media.

### D.  The Pretermination Hearing

On February 19, 2010, Ford wrote to Washington "as a professional courtesy to notify you that at the Board meeting on March 11, 2010, I will be recommending to the Board of Trustees that your employment contract be terminated due to your Indictment on criminal charges."  Docket Entry No. 29-3 at 26.  The letter, which was signed by Ford alone, went on to state that "[i]f you want to know what your options are before this recommendation is officially made to the Board, please discuss those options with your legal representative.  You may also schedule a meeting with Rollie Ford, if you would prefer.  You may bring your representative to that meeting if you choose to do so."  *Id.*  Ultimately, the recommendation to terminate was postponed for a Board meeting later in March.

On March 22, 2010, the Board publicly posted a notice and agenda for a meeting to be held on March 25, 2010.  That agenda included a line item that read "Consider recommendation to propose the termination of the

contract and employment of the LMISD Chief of Police."  Docket Entry No. 29-3 at 30.  Washington admits that he received notice of the March 25 meeting on March 22, although the record is unclear whether he was personally informed by someone at LMISD or if he merely saw the public agenda.

The Board met as scheduled on March 25, 2010 to consider Burley's recommendation to terminate Washington's employment.  Although the March 25 meeting was open to the public at Washington's request, no one except Burley, Ford, and the Board members was allowed to speak or give input.  *See* Docket Entry No. 31-9 at 6.  Burley and Ford presented the recommendation, and, after some discussion, the Board voted 4–3 in favor of accepting the recommendation and terminating Washington's employment.

### E. The Post-termination Hearing

On March 30, 2010, Ford wrote Washington to inform him that he was "entitled to request a hearing before the Board of Trustees."  Docket Entry No. 29-3 at 32.  Washington promptly requested a hearing, which was held on April 22, 2010.  The relevant agenda line item for the meeting read "Termination hearing of La Marque ISD Chief of Police."  Docket Entry No. 29-3 at 36.  Although one of the Trustees moved to overturn Washington's

termination and reinstate him, that motion failed 3–4, with the voting breakdown identical to that of the March 25 vote.  Washington did not appeal that decision to the Texas Education Agency's Commissioner of Education or to state district court, as he could have done under Texas law.

### F.  The Indictment Is Dismissed

Although Washington remained under indictment throughout 2010, the criminal case languished.  In February 2011, after Sistrunk had lost his bid for reelection and a new District Attorney had been sworn in, the District Attorney's Office moved for and obtained a dismissal of all charges against Washington.

### G.  Washington's Lawsuits

In February 2012, Washington filed two lawsuits to challenge his termination, one in state court, and one in this Court.  Over the next several months, Washington filed a number of amended pleadings and Defendants removed the state court action to this Court, which ultimately consolidated it with the original federal action.  *See Washington v. Burley*, No. 3-12-154, 2012 WL 5289682, at *1–2, 6 (S.D. Tex. Oct. 23, 2012).  Washington's two suits have since proceeded in this single, consolidated case.

In his live pleadings, Washington sues LMISD for violating his right to procedural due process under the Fourteenth Amendment and for

violating the Texas Open Meetings Act by failing to provide adequate notice that the Board would consider terminating his employment at the March 25 meeting.  He also brings various tort claims against Burley; Ford; LMISD's new Chief of Police Timothy Fields; Trustees Bell-Malveaux, Holcomb, Cantu, and Rac; and former District Attorney Sistrunk.  *See generally* Docket Entry No. 3; No. 3:12-cv-41, Docket Entry No. 6.  Generally, he alleges that Burley conspired with Sistrunk and the other Defendants to have him indicted on false charges as an excuse to have him terminated.

Sistrunk has since moved to dismiss on the ground that he has absolute prosecutorial immunity from suit.  Washington and LMISD have filed cross-motions for summary judgment on Washington's procedural due process claim, and LMISD has moved for summary judgment on Washington's Texas Open Meetings Act claim.

## II.   PROSECUTORIAL IMMUNITY

### A.    *Standard of Review*

The Court first addresses Defendant Sistrunk's Rule 12 motion to dismiss.  The former District Attorney argues that he is entitled to absolute immunity because Washington's claims against him are based on the actions he took in his role as a prosecutor.  Washington only brings state law claims against Sistrunk, but since the law of prosecutorial immunity in Texas

follows federal jurisprudence, *see Charleston v. Allen*, -- S.W.3d --, 2012 WL 4858195, at *1–2 (Tex. App.—Texarkana Oct. 15, 2012, no pet. h.); *Font v. Carr*, 867 S.W.2d 873, 877–78 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.), the Court applies federal case law to resolve the issue.

Courts analyze prosecutors' claims to immunity using the "functional approach" set forth in *Imbler v. Pachtman*, 424 U.S. 409 (1976). *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citations omitted). This approach entitles prosecutors to absolute immunity for actions taken in "'initiating a prosecution and in presenting the State's case,' . . . insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Imbler*, 424 U.S. at 430–31). Thus, a prosecutor acting as an advocate in the judicial process is entitled to absolute immunity, even if, for example, he knowingly presents false evidence to a court or grand jury. *See Kalina v. Fletcher*, 522 U.S. 118, 129–30 (1997). But prosecutors receive only qualified immunity for "those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (citation omitted). Thus, a prosecutor is not fully immunized for any role he may have played in conspiring to create false evidence because "[w]hen a

prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Id.* at 272–73 (internal quotation marks and citation omitted).

### B.    Discussion

The crux of Washington's claims against Sistrunk is that "Sistrunk knowingly filed baseless indictments against the Plaintiff after discussions with Defendants Burley and Malveaux knowing full well that the baseless indictments would lead to the termination of Plaintiff's employment with LMISD for proper cause."  Docket Entry No. 3 at 18–19.  Unfortunately for Washington, *Imbler* gives Sistrunk absolute immunity for his conduct before the grand jury.  *See Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985) ("[P]resentation of evidence to a grand jury in a manner calculated to obtain an indictment, even when maliciously, wantonly or negligently accomplished, is immunized by *Imbler*."); *see also Moore v. United States*, 213 F.3d 705, 708 (D.C. Cir. 2000) (discussing case law holding that absolute immunity defeats claims of "concealing exculpatory evidence from the grand jury" and "manipulating evidence before the grand jury to create a false impression" (quoting *Moore v. Valder*, 65 F.3d 189, 194 (D.C. Cir. 1995) (internal quotation marks omitted)).  He engaged in

that conduct in his role as an advocate, and it falls squarely within the realm of conduct intimately associated with the judicial process. Sistrunk is thus entitled to absolute immunity for filing charges against Washington even if, as Washington alleges and the Court must assume to be true for purposes of a Rule 12 motion, he acted maliciously and knew that the charges were baseless.

Perhaps realizing this flaw in his claim, Washington argues for the first time in his response to the motion to dismiss that Sistrunk had been involved "in a conspiracy going back to 2007 to manufacture evidence with the other Defendants." Docket Entry No. 16 at 4. Prosecutors are not entitled to absolute immunity for their role in creating evidence, as opposed to presenting it to a grand jury or court, as the former is an investigative function. *See Buckley*, 509 U.S. at 272–76.

However, Washington's factual allegations, taken as true, show only that Sistrunk knowingly presented baseless indictments to the grand jury. The only alleged facts in the complaint regarding Sistrunk appear in two lengthy footnotes. In those footnotes, Washington alleges that (1) Burley contacted Sistrunk in October 2007 "about an incident where Plaintiff had to forcibly restrain a student" and that a grand jury ultimately declined to indict Washington for that incident; (2) that afterward Washington saw an e-mail

from Sistrunk to Burley in which Sistrunk said something to the effect of "not to worry, we will get him next time"; (3) that in September 2009 "Burley and Sistrunk again manufactured bogus charges" alleging auto theft and that "Burley and Sistrunk had charges levied that Plaintiff was involved in, and the master-mind of, an 'auto theft ring'"; (4) acting on complaints filed by Burley and Ford, "Sistrunk presented the evidence himself to a grand jury and got his indictment"; and (5) that Burley and Sistrunk "struck a bargain" in which Sistrunk would prosecute Washington and in return Burley would help "deliver" "the black votes" in La Marque and Texas City for Sistrunk's reelection campaign.  Docket Entry No. 3 at 13–14 nn.16–17.

Of these alleged facts, the first, third, and fourth deal directly with Sistrunk's advocacy role in presenting evidence and proposing indictments to the grand jury.  These do not support a claim that Sistrunk was engaged in the unprotected investigatory function of manufacturing evidence.  The alleged e-mail from Sistrunk in which he supposedly wrote something to the effect of "we will get [Washington] next time" might show that Sistrunk had an improper desire or motive to prosecute Washington; it does not, however, constitute an allegation that Sistrunk participated in a conspiracy to manufacture evidence.  And the same is true of Washington's allegations that Sistrunk agreed to prosecute him as part of a scheme to win reelection.

Washington may have adequately alleged that Sistrunk knowingly and wrongfully presented baseless indictments to the grand jury. But that is the type of activity that is protected by absolute prosecutorial immunity. *See Torres v. City of Houston*, No. H-12-2323, 2012 WL 6554157, at *1–2 (S.D. Tex. Dec. 14, 2012) (immunizing a prosecutor for allegedly failing to present exculpatory evidence to a grand jury); *George v. Harris County.*, No. H-10-3235, 2012 WL 2744332, at *15 (S.D. Tex. July 9, 2012) (immunizing a prosecutor for allegedly seeking an indictment for aggravated sexual assault "despite extensive evidence of . . . innocence"). Washington has not made any specific allegations showing that Sistrunk was involved in a conspiracy to manufacture false evidence or in any other investigatory activity that fell outside Sistrunk's role as an advocate in the judicial process. Thus, Sistrunk is entitled to absolute immunity, and Washington's claims against him must be dismissed.

### III. PROCEDURAL DUE PROCESS

#### A.   *Washington's Due Process Claims*

The Court next addresses Washington's and LMISD's motions for summary judgment on the procedural due process claims. Washington alleges that LMISD violated his right to procedural due process in three primary ways. He argues first that LMISD denied him pretermination due

process when it failed to notify him of his potential termination or give him an opportunity to present a defense to Burley's recommendation that he be terminated prior to the Board's vote to terminate on March 25, 2010. Second, he contends that Defendant Bell-Malveaux's bias tainted the Board's vote to terminate. Third, he contends that the bias of the trustees also tainted the Board's April 22 post-termination hearing vote not to reinstate him.[2]

Although Washington has only moved for summary judgment on his first due process claim, that he was denied pretermination notice and an opportunity to be heard, LMISD has moved for summary judgment on all of Washington's claims. The Court thus examines each issue in turn, mindful that it should grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All reasonable doubts on questions of fact must be resolved in favor of the party opposing

---

[2] Washington raises two additional due process claims. First, he argues that LMISD violated an internal district policy requiring that Washington receive pretermination notice and a hearing. But whether Washington was entitled to such a notice and hearing under state law or district policy is irrelevant to whether he received due process under the federal constitution. *See Brown v. Tex. A&M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986) (citing *Levitt v. Univ. of Tex. El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985)). Second, he argues that Burley engaged in improper *ex parte* communications with the Board before the March 25 vote. However, Washington presents no evidence to substantiate this allegation. Thus, the Court will grant summary judgment in favor of LMISD on these two claims.

summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

### B.    *Claims Relating to Pre-Termination Hearing*

### 1.    The General *Loudermill* Requirement

LMISD does not dispute that Washington, whom it employed pursuant to a two-year contract, had a constitutionally protected property right to continued employment that it could not deprive him of without due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 576–78 (1972)). Generally, the level of due process that is required in a given situation is determined by balancing three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). In the specific context of the termination of a tenured employee, the Supreme Court has ruled that due process ordinarily requires the employer to give the employee "some kind of a hearing" prior to termination, namely,

"oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 542–546 (internal quotation marks and citations omitted).

LMISD argues, however, that a *Loudermill* pretermination hearing was not required because the felony charge against Washington, a law enforcement officer occupying a position of trust and leadership, required an immediate response and LMISD promptly afforded Washington an adequate post-termination hearing. LMISD primarily relies on *Gilbert v. Homar*, 520 U.S. 924 (1997), which held that "where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Id*. at 930. But *Gilbert* addressed whether tenured employees were entitled to a *Loudermill* hearing before being suspended and distinguished its plaintiff who "faced only a *temporary suspension* without pay" from the "employee in *Loudermill*, who faced *termination*." *Id.* at 932 (emphasis in original) (citation omitted). The *Gilbert* court reasoned that the state had a "significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." *Id.* at 932.

LMISD misinterprets *Gilbert* to mean that the pretermination hearing *Loudermill* normally requires need not occur when an employee in a position of public trust is indicted on a felony charge, so long as that employee receives a post-termination hearing.  But *Gilbert* is based on the balancing of *Mathews* interests when deciding to suspend an employee, at which time the need for speedy removal of a potentially dangerous employee from the workforce is paramount.  *See, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 324–25 (5th Cir. 2008) (applying *Gilbert* to uphold the suspension of a dentist working with disabled patients); *Patel v. Midland Mem. Hosp.*, 298 F.3d 333, 339–41 (5th Cir. 2002) (applying *Gilbert* to uphold the suspension of a cardiologist's medical privileges); *Payne v. Park*, No. 3:11-CV-0497-B, 2012 WL 2958624, at *4–5 (N.D. Tex. July 19, 2012) (applying *Gilbert* to uphold the suspension of a private security guard's license after the guard had been charged with a misdemeanor).  Once the suspension takes place, the risk posed by the employee is temporarily removed, the need for further immediate action dissipates, and the employer has time to provide the *Loudermill* pretermination hearing, which need not be lengthy.  *Cf. Núñez Colon v. Toledo-Dávila*, 648 F.3d 15, 23 (1st Cir. 2011) (noting the importance of the fact that the plaintiff in *Gilbert* had been suspended and not terminated); *Argyropoulous v. City of Alton*, 539 F.3d 724, 740–41 (7th

Cir. 2008) (noting in dicta that *Gilbert* "does not displace the near-categorical guarantee of at least *some* pre-termination process to tenured public employees as discussed in [*Loudermill*]" (emphasis in original)); *Kermode v. Univ. of Miss. Med. Ctr.*, No. 3:09CV584-DPJ-FKB, 2011 WL 4351340, at *5 (S.D. Miss. Sept. 15, 2011) (citing *Gilbert* in noting that "[s]eparation with pay is not the same as termination").

Washington's case underscores this difference.   He has never contended that he was entitled to a hearing before he was suspended with pay in September 2009.  He argues only that LMISD never afforded him due process before terminating him in March 2010.  The decision to terminate Washington did not implicate the need for speedy resolution that may apply to suspensions under *Gilbert* because the Board waited three months after the indictment issued to terminate Washington and then postponed the earlier March hearing date.   *Gilbert* did not relieve LMISD of its constitutional obligation to provide Washington with "some kind of a hearing" prior to his termination. *Loudermill*, 470 U.S. at 542

LMISD, however, cites an additional reason why it contends that Washington cannot challenge the inadequacy of the pretermination process in federal court: state law provided Washington with the right to appeal the termination decision to both the State Commissioner of Education and a

state district court.  *See Rathjen v. Litchfield*, 878 F.2d 836, 839–40 (5th Cir. 1989) ("[N]o denial of procedural due process occurs where a person has failed to utilize the state procedures available to him.").  But LMISD again misses the mark and tries to plug a doctrine into a hole it does not fit.

The line of cases LMISD cites is based on the common sense principle that a plaintiff "cannot skip an available state remedy and then argue that the deprivation by the state was the inadequacy or lack of the skipped remedy."  *Rathjen v. Litchfield*, 878 F.2d at 840 (quoting *Myrick v. City of Dallas*, 810 F.2d 1382, 1388 (5th Cir. 1987)).  Thus, a plaintiff obviously cannot bring a *Loudermill* due process claim when the state afforded him a constitutionally sufficient pretermination hearing yet he declined to participate in it.  *See Galloway v. Louisiana*, 817 F.2d 1154, 1158 (5th Cir. 1989).  Likewise, a plaintiff cannot challenge the procedures at a post-termination hearing when the state provided ample procedures in another post-termination setting, such as an administrative or judicial appeal. *See Myrick*, 810 F.2d at 1388; *Pope v. Miss. Real Estate Comm'n*, 872 F.2d 127, 131–32 (5th Cir. 1989).  But in arguing that the availability of a post-termination appeal prevents Washington from challenging the adequacy of pretermination procedures, LMISD mixes the two separate stages at which the state must generally provide due process.  *See Loudermill*, 470 U.S. at

546–47 & n.12 (noting that a plaintiff's challenges to both pre and post-termination denials of due process were distinct from one another and "separate claim[s] altogether").

The first Fifth Circuit case applying this doctrine demonstrates that the availability of a post-termination appeal does not foreclose a due process challenge to pretermination procedures. *See Myrick*, 810 F.2d at 1386–88. In *Myrick*, the plaintiff, like Washington, challenged the adequacy of her employer's pretermination procedures and the alleged bias of the post-termination hearing board even though she failed to appeal the board's adverse post-termination decision. *See id.* But, unlike Washington, Myrick also challenged the adequacy of the post-termination procedures themselves. *Id.* The Fifth Circuit held that Myrick's failure to appeal barred this challenge to the post-termination procedures, *id.* at 1388, but did not find barred the challenges to the pretermination procedures or the board's bias, both of which it addressed on their merits. *Id.* at 1386–88. LMISD's broader reading of *Myrick* to bar challenges to both pre and post-termination procedures when appeals are allowed would eviscerate *Loudermill*, which holds that a pretermination opportunity for the employee to present his side of the story is required even when the state affords the employee full post-

termination administrative and judicial review. *Loudermill*, 470 U.S. at 545–46.

Indeed, the Fifth Circuit has expressly rejected LMISD's argument that the availability of post-termination appeals bars a due process challenge to pretermination procedures:

> Because a tenured public employee is entitled to some predeprivation process, the existence of an adequate postdeprivation remedy cannot by itself defeat that employee's procedural due process claim. . . .
>
> . . .
>
> [Plaintiff's] failure to exhaust his postdeprivation state remedies does not foreclose his claim of lack of predeprivation process. A dismissed employee cannot dispute the adequacy of postdeprivation remedies if he fails to utilize them. [Plaintiff's] procedural due process claim, however, is based on lack of predeprivation process. His failure to exhaust his postdeprivation remedies does not affect his entitlement to predeprivation process.

*Chiles v. Morgan*, 53 F.3d 1281, 1995 WL 295931, at *1–2 (5th Cir. 1995) (per curiam, unpublished opinion) (citing *Rathjen*, 878 F.2d at 839–40; *Myrick*, 810 F.2d at 1388); *see also Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 936 (8th Cir. 2012) ("[I]t is not necessary for a litigant to have exhausted available *postdeprivation* remedies when the litigant contends that he was entitled to *predeprivation* process." (emphasis in original) (citation and internal quotation marks omitted)). *Chiles* is binding

precedent and thus controls this Court's decision. *See* 5th Cir. R. 47.5.3 (unpublished opinions issued before January 1996 have precedential force). The availability of post-termination appeals does not preclude Washington's claims that he did not receive pretermination due process.

### 2. Whether LMISD Afforded Washington a Pretermination Opportunity to Be Heard

With these defenses out of the way, the question becomes whether the process LMISD afforded Washington prior to his March 25 termination complied with the Due Process Clause.  Washington was entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 542, 546 (citation omitted).

Washington argues both that he did not receive sufficient notice of the charges and evidence against him and that he did not have an opportunity to present his side of the story.  While conceding that Washington was not allowed to address the Board at the March 25 meeting, LMISD argues that it gave Washington adequate pretermination due process by (1) asking for his written response to the District Attorney's investigation in September and October 2009; (2) informing him in February 2010 that the Board would be hearing Burley's recommendation to terminate due to Washington's

indictment; and (3) being willing to accept any statement or argument that Washington submitted in writing prior to the March 25 vote.

As an initial matter, Washington received adequate notice of the charges against him. "Due process requires only notice that is both adequate to apprise a party of the pendency of an action affecting its rights and timely enough to allow the party to present its objections." *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 521 (5th Cir. 1998) (citation and internal quotation marks omitted). Through Assistant Superintendent Ford's February 19, 2010 letter, LMISD gave Washington notice that the Board was planning on voting on the recommendation to terminate on March 11, and that the recommendation was based on the fact that Washington had been indicted. *See* Docket Entry No. 29-3 at 26; *cf. Biliski v. Red Clay Consol. Sch. Dist.*, 574 F.3d 214, 221–22 (3d Cir. 2009) (finding notice sufficient where the plaintiff's supervisors explained to him why they were recommending his termination and gave him a letter stating that they would submit the recommendation to the school board, the final decisionmaker). While it is true that the vote was delayed two weeks, Washington admits that he received notice of the impending March 25 hearing on March 22. Docket Entry No. 32 at 20. Washington received constitutionally adequate notice of

the termination vote and the underlying basis of Burley's recommendation to terminate.

The tougher question is whether Washington received an adequate opportunity to present his side of the story.  In *Loudermill*, the Supreme Court made clear that "the pretermination 'hearing,' though necessary, need not be elaborate."  *Loudermill*, 470 U.S. at 545.  The Court noted that "something less than a full evidentiary hearing is sufficient prior to adverse administrative action" and concluded that the "opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  *Id.* at 545–46 (citation and internal quotation marks omitted).

The Fifth Circuit has further explored the question of what constitutes an adequate pretermination opportunity to be heard.  In *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459 (5th Cir. 2003) (en banc), the Circuit clarified that it is the "final decision maker" who "must hear and consider the employee's story before deciding whether to discharge the employee." *Id.* at 465 (citation omitted).  So long as the employee has the right to respond to the charges before the final decisionmaker, the hearing need not be elaborate.  In *Myrick*, the Dallas Fire Department terminated Myrick because of the manner in which she responded to a phone call for emergency

medical assistance. *Myrick*, 810 F.2d at 1384. Before terminating her, the Fire Department invited Myrick to submit a written response and allowed her to discuss the incident informally with the Fire Department's chief, the final decisionmaker. *Id.* The Fifth Circuit held that she had received all the pretermination process *Loudermill* required. *Id.* at 1386; *see also Browning v. City of Odessa*, 990 F.2d 842, 844–45 (5th Cir. 1993) (informal pretermination half-hour meeting between the employee and the final decisionmaker sufficient to satisfy due process).

Thus, Washington's right to pretermination due process would have been satisfied had LMISD provided him with even a short, informal opportunity to present his side of the story to the board members who would vote on his termination. However, the summary judgment record does not make clear that Washington had that opportunity. Therefore, neither party is entitled to summary judgment on the claim that the pretermination hearing failed to provide procedural due process.

A reasonable jury could conclude that LMISD gave Washington an opportunity to respond by submitting a written statement to LMISD or the Board prior to the March 25 meeting. Ford's October 2009 letter ordered Washington to state his understanding of the facts, Docket Entry No. 29-3 at 14, while Ford's February letter informed Washington that he could

schedule a meeting with Ford or discuss his options with his own legal representative.  *See* Docket Entry No. 29-3 at 26.  Moreover, LMISD has submitted an affidavit by Burley in which Burley states that Washington was allowed to submit any information he wanted to LMISD or to the Board directly prior to the March 25 meeting.  Docket Entry No. 29-2 ¶ 8.  A reasonable jury could conclude that Ford's correspondence was sufficient to make Washington, who was represented by legal counsel and had been through previous disciplinary proceedings, aware that he could submit a full written statement prior to the March 25 meeting.

On the other hand, given the ambiguity in this correspondence, a reasonable jury could conclude that LMISD never allowed Washington to submit a written response or otherwise present his response to the Board, which was the final decisionmaker.  First, it is undisputed that nobody except Burley, Ford, and the Board was allowed to speak at the March 25 meeting.  With respect to Ford's letters, the October 2009 preindictment letter only instructed Washington to "state in your words what you know and understand to be the facts concerning the allegations and ongoing investigation that led to your placement on administrative leave."  Docket Entry No. 29-3 at 14.  It did not expressly state that Washington could respond to the allegations or that any such response would be provided to the

Board, and it was sent two months before the indictment issued and four months before Washington was notified that the Board was meeting to consider a recommendation to terminate him. This uncertainty concerning the October 2009 letter prevents the Court from concluding as a matter of law that the letter provided Washington with a "meaningful opportunity to invoke the discretion of the decisionmaker." *Coggin*, 337 F.3d at 465 (quoting *Loudermill*, 470 U.S. at 543 & n.8).

The one letter Washington received after the indictment but before his termination, the February 19 letter, offered only a personal meeting with Ford. This offer was insufficient because Ford was not the final decisionmaker. And the letter contained no invitation to submit a written statement to the Board or notice that Washington could request a meeting with the Board. The absence of any such invitation, especially when contrasted with the express statement in the post-termination letter that "you are entitled to request a hearing before the Board of Trustees," Docket Entry No. 29-3 at 32, would allow a jury to conclude that LMISD denied Washington his constitutional right to respond to the charges before the vote on his termination.[3] Finally, while Burley's affidavit states that Washington

---

[3] The process afforded Washington in March 2010 also contrasts starkly with the two-day pretermination hearing held when Burley recommended the Board terminate Washington in August 2008. *See* Docket Entry No. 3-26 at 4.

could have submitted information to the Board prior to the termination vote, contemporaneous comments he made at the April 2010 post-termination hearing indicate it presented Washington's only opportunity to respond to the charges. *See* Docket Entry No. 32-5 at 72. ("We're here tonight because [Washington] has chosen to exercise his right for a hearing. [Washington's] Counsel tried to say that he was not afforded that opportunity. I think counsel's confused. This is his opportunity to submit evidence to support why he should not have been—why the termination should be overturned. I would disagree with counsel that he has not been given due process. This is his opportunity for that due process hearing . . . .").

Thus, there remains a genuine issue of material fact concerning whether LMISD gave Washington "an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546 (citations omitted). Although due process claims are often decided on undisputed facts at the summary judgment stage, the Fifth Circuit has recognized that fact issues sometimes exist concerning whether an employee was afforded an opportunity to respond to the charges. *See Russell v. Harrison*, 736 F.2d 283, 289–90 (5th Cir. 1984) (denying summary judgment because a fact issue existed regarding "whether plaintiffs were given the opportunity to rebut the reasons given for their termination at a hearing or otherwise"); *see also Riggan v.*

*Midland Indep. Sch. Dist.*, 86 F. Supp. 2d 647, 658–59 (W.D. Tex. 2000) (denying summary judgment because fact issues existed regarding whether the student had received notice or an opportunity to be heard prior to his suspension from school); *cf. Loudermill*, 470 U.S. at 562–63 (Rehnquist, J., dissenting) ("The lack of any principled standards in this area means that these procedural due process cases will recur time and again.  Every different set of facts will present a new issue on what process was due and when.").  This is another such case, as there is conflicting evidence that a jury needs to weigh in determining whether LMISD provided Washington with an adequate opportunity to respond to the charges before the termination vote.

### 3.   Claim Alleging Bias at Pretermination Hearing

Washington alleges a second due process claim relating to the March 25 hearing that focuses not on the procedures provided but on the alleged bias of Defendant Bell-Malveaux.[4]

---

[4] Although LMISD does not cite it, the Supreme Court's *Parratt* decision sometimes prevents challenges to the partiality of decisionmakers at pretermination hearings.  *See generally Parratt v. Taylor*, 451 U.S. 527 (1981).  *Parratt* excuses the state from certain due process requirements if the deprivation was caused by "a state employee's random, unauthorized conduct."  *Zinermon v. Burch*, 494 U.S. 113, 115 (1990).  The Fifth Circuit has held that the bias of the person who decides to terminate the plaintiff's employment is one of the kinds of "random unauthorized acts" that invoke the *Parratt* doctrine.  *See Schaper v. City of Huntsville*, 813 F.2d 709, 715–16 (5th Cir. 1987) (holding that the final decisionmaker at a pretermination hearing need not be impartial, so long as the plaintiff promptly receives an impartial post-termination hearing); *see also McDaniels v. Flick*, 59

"The basic requirement of constitutional due process is a fair and impartial tribunal, whether at the hands of a court, an administrative agency or a government hearing officer." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997) (citing *Gibson v. Berryhill*, 411 U.S. 564, 569 (1973)). However, to prevail on a claim of bias, a plaintiff must be able to show not only the appearance of bias, but that the decisionmaker was actually biased against him. *See Levitt v. Univ. of Tex. El Paso*, 759 F.2d 1224, 1228 (5th Cir. 1985). Actual bias occurs, and the constitutional guarantee of due process is thus violated, "(1) where the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) where an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) when a judicial or quasi-judicial decision maker has the dual role of investigating and adjudicating disputes and complaints." *Valley*, 118 F.3d at 1052 (citing *Baran v. Port of Beaumont Navigation Dist.*, 57 F.3d 436, 444–46 (5th Cir. 1995)).

---

F.3d 446, 460 (3d Cir. 1995) (same). But *Schaper* only applies to bar suit if the plaintiff later receives an impartial post-termination hearing. Since Bell-Malveaux, the allegedly biased decisionmaker, remained involved in Washington's post-termination hearing even after Washington's counsel raised the conflict issue, *Schaper* does not bar Washington's claim that the March 25 termination vote was unconstitutionally biased.

Washington has submitted evidence that would allow a jury to find that Bell-Malveaux was actually biased against him.[5]  In May 2009, Bell-Malveaux sued Washington in state court for defamation.   That suit remained pending until the state court nonsuited the case on Bell-Malveaux's motion in August 2010.  *See* Docket Entry No. 32-10; Order for Non Suit, *Malveaux v. Washington*, No. 09-CV-0678 (212th Dist. Ct., Galveston Cnty., Tex. Aug. 2, 2010).   Thus, at the time she voted to terminate Washington's employment, Bell-Malveaux was only months away from asking a jury to award her damages against Washington.  Moreover, the basis of that suit was Washington's widely reported comments that Bell-Malveaux and a number of other LMISD trustees had engaged in corruption by accepting kickbacks from a private contractor.  This falls squarely in the second avenue for finding bias listed in *Valley*: Bell-Malveaux had been the target of high profile personal criticism from Washington.  The undisputed fact that Bell-Malveaux was engaged in a defamation lawsuit against Washington at the time she voted on his termination is sufficient to create a

---

[5] The court reaches this decision without considering two affidavits Washington submitted that, if admissible, would be probative of Bell-Malveaux's bias.  *See* Docket Entry Nos. 32-11; 32-12.  The Court thus need not rule on LMISD's objections to these affidavits.

genuine issue of material fact regarding whether Bell-Malveaux was actually

biased against Washington.[6]

### C.    Claim Alleging Bias at Post-Termination Hearing

Bell-Malveaux also participated in the April 22 post-termination

hearing and her defamation suit against Washington was still pending at that

time.  Washington thus cites the same evidence to support his allegation that

her participation in the post-termination vote not to reinstate his employment

deprived him of due process.    Additionally, Washington claims that

Defendant Holcomb's vote should not have been counted at the April 22

ballot because she was no longer a resident of the district.

But this is where LMISD's argument about the availability of post-

termination appeals has force.    Although, the post-termination appeals

process could not cure any pretermination deficiencies, *see Loudermill*, 470

U.S. at 545–46; *Chiles*, 53 F.3d 1281, 1995 WL 295931, at *1–2, it did

provide Washington with the impartial fora of both a state administrative

---

[6] LMISD does not challenge causation on this issue.  In any event, because the vote to terminate Washington's employment was 4–3, Bell-Malveaux cast the deciding vote in that ballot.  And, regardless, cases hold that a single biased member of an adjudicatory panel may be sufficient to find that the entire panel is tainted.  *See, e.g.*, *Stivers v. Pierce*, 71 F.3d 732, 747 (9th Cir. 1995) (finding a single panel member's bias sufficient to taint the entire panel even in a unanimous vote and noting that "on a small board . . . a single person's bias is likely to have a profound impact on the decisionmaking process"); *Hicks v. City of Watonga*, 942 F.2d 737, 748 (10th Cir. 1991) (citation omitted) (finding a single panel member's bias sufficient to taint the entire panel); *Antoniu v. SEC*, 877 F.2d 721, 726 (2d Cir. 1989) (same); *see also Valley*, 118 F.3d at 1053–55 (holding that a panel that voted 6–3 to suspend a plaintiff was unconstitutionally tainted by the bias of four panel members).

agency and a state district court in which to challenge any deficiencies in the post-termination proceedings. These opportunities constituted sufficient post-termination process before an impartial adjudicator, but Washington elected not to pursue them. LMISD thus afforded Washington adequate post-termination due process as a matter of law. Summary judgment is appropriate on this last claim.

### IV.   TEXAS OPEN MEETINGS ACT

The final issue to decide is whether LMISD is entitled to summary judgment on Washington's Texas Open Meetings Act claim. The Act requires governmental bodies such as LMISD to "give written notice of the date, hour, place, and subject of each meeting held." Tex. Gov't Code Ann. § 551.041. Washington argues that LMISD violated the requirement to give adequate notice of the "subject" of the March 25 meeting at which the Board voted to terminate his employment.

The Board's agenda for the March 25 meeting, which was publicly posted on March 22, included the following line item: "Consider recommendation to propose the termination of the contract and employment of the LMISD Chief of Police." Docket Entry No. 29-3 at 30. Washington contends that, since the line item only mentioned the proposal to terminate

rather than the possibility of actual termination, it did not constitute adequate notice of the fact that the Board might actually vote to terminate him.

Generally, a notice is sufficient under the Act if it informs the reader that "some action" will be considered with regard to the topic. *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 646 (Tex. 1975); *see also City of San Antonio v. Fourth Ct. of Appeals*, 820 S.W.2d 762, 766 (Tex. 1991) (holding that a proposed condemnation posting that only specified the county blocks in which condemnation was to occur and not the individual properties to be condemned was sufficient notice because "readers who did own property in [the] blocks were on notice of some risk that their land might be condemned"). The required specificity of the notice is directly related to the level of public interest in the topic to be discussed and increases as the public's level of interest increases. *Cox Enters., Inc. v. Bd. of Trs. of the Austin Indep. Sch. Dist.*, 706 S.W.2d 956, 959 (Tex. 1986). With respect to termination decisions in particular, one Texas court of appeals has held that the "public has a special interest in matters relating to the employment of its police chief." *Mayes v. City of De Leon*, 922 S.W.2d 200, 203 (Tex. App.—Eastland 1996, writ denied). And that is the case here given public and media interest in Washington's longstanding feud with Burley and Bell-Malveaux.

Even under this heightened requirement, LMISD provided adequate notice that it would be discussing the possible termination of Washington's employment at the March 25 meeting. The posted agenda was not vague or deceptive, and it did not merely state that the Board would be considering general personnel issues as did the notice found inadequate in *Mayes*, 922 S.W.2d at 203; rather, it specifically stated that the Board would consider a recommendation relating to the potential termination of Washington's employment. Docket Entry No. 29-3 at 30. The distinction that Washington points to between the proposal to terminate and the actual termination is not legally relevant, for Texas case law is clear that "although the reader needs to know the topic of discussion, the notice need not state all of the possible consequences resulting from consideration of the topic." *Rettberg v. Tex. Dep't of Health*, 873 S.W.2d 408, 411 (Tex. App.—Austin 1994, no writ) (citing *Tex. Turnpike Auth. v. City of Fort Worth*, 554 S.W.2d 675, 676 (Tex. 1977)). The notice that the Board would discuss the recommendation to propose Washington's termination was not rendered insufficient solely because it failed to mention an obvious consequence of that discussion: that the Board might go ahead and actually vote to terminate. Summary judgment is appropriate on Washington's Texas Open Meetings Act claim.

## V.   CONCLUSION

Based on the foregoing, the Court makes the following rulings. Washington's allegations against Defendant Kurt Sistrunk only concern Sistrunk's actions as an advocate in the judicial process; thus, Sistrunk is entitled to absolute immunity, and his Motion to Dismiss (Docket Entry No. 10) is **GRANTED**.

Summary judgment on Washington's first two procedural due process claims is inappropriate because there is a genuine issue of material fact regarding whether LMISD gave Washington an opportunity to be heard prior to the March 25 termination vote and whether the termination vote was tainted by Defendant Bell-Malveaux's alleged bias.  Washington's Motion for Partial Summary Judgment (Docket Entry No. 26) is therefore **DENIED**, and LMISD's Motion for Summary Judgment (Docket Entry No. 29) is **DENIED IN PART** with respect to these two claims.

However, summary judgment is appropriate on Washington's claim that the post-termination hearing was tainted by bias because the post-termination appeals process constituted an adequate remedy to cure any deficiencies in that hearing.  Finally, LMISD provided sufficient notice that Washington's termination would be discussed and possibly acted on at the March 25 meeting.  LMISD's Motion for Summary Judgment (Docket Entry

No. 29) is therefore **GRANTED IN PART** with respect to Washington's claim that the post-termination reinstatement vote was biased and with respect to his claim that LMISD violated the Texas Open Meetings Act.

      **IT IS SO ORDERED**.

      **SIGNED** this 11th day of March, 2013.

_____

Gregg Costa

United States District Judge
